Megan E. Glor, OSB No. 930178
Email: megan@meganglor.com
John C. Shaw, OSB No. 065086
Email: john@meganglor.com
Megan E. Glor, Attorneys at Law, P.C.
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JENNIFER E. MUELLER, | Case No. 3:22-cv-01132-SB |
| Plaintiff, | |
| v. | PLAINTIFF'S MOTION FOR JUDGMENT UNDER FRCP 52 |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | |
| Defendant. | |

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................ iii

I.    Certification Under LR 7-1(a) ................................................................1

II.   Introduction ...........................................................................................1

III.  Argument ...............................................................................................3

    A.  Dr. Mueller is Disabled From Her Occupation as a
        Family Practice Physician .............................................................4

        1.  The applicable standard of review is de novo ..........................4

        2.  Dr. Mueller's "Occupation" is family practice
            physician ..................................................................................5

        3.  Dr. Mueller developed post concussion syndrome
            as the result of a March 2019 bicycle accident ......................5

        4.  Dr. Mueller began occupational, physical and
            speech therapy in April 2019 ...................................................6

        5.  Dr. Mueller returned to part-time medical practice
            in May 2019 with continuing PCS symptoms ..........................8

        6.  Dr. Mueller was unable to return to full-time medical
            practice because of continuing PCS symptoms .....................11

        7.  Dr. Mueller is among the 10 percent of mTBI
            patients whose symptoms persist a year after injury ...........13

        8.  Dr. Mueller remained disabled through the close
            of the record ..........................................................................15

        9.  Dr. Stelmack and Dr. Laughlin confirmed that
            Mueller is disabled .................................................................21

    B.  Hartford Erroneously Denied Dr. Mueller's LTD Claim ..........21

        1.  Hartford's file review consultants concluded that
            Dr. Mueller was not disabled based primarily upon
            a lack of objective test findings ..............................................22

2.  Hartford's consultants did not address whether
    Dr. Mueller can practice family medicine on
    a full-time basis..............................................................................27

3.  Hartford's consultants failed to reasonably consider
    Dr. Mueller's primary PCS symptom of fatigue and
    lack of stamina ...............................................................................28

4.  Hartford's consultants erroneously ignored and
    downplayed Dr. Mueller's cognitive symptoms based
    upon normal objective test results...................................................29

5.  Hartford erroneously relied upon the opinions of
    file review consultants who never met Dr. Mueller...................30

IV.    Conclusion ...........................................................................................32

## TABLE OF AUTHORITIES

<u>**U.S. Supreme Court**</u>

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)...................................................4

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).............................................................3

*Pegram v. Herdrich*, 530 U.S. 211 (2000).........................................................................28

<u>**U.S. Court of Appeals**</u>

*Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999)................................................4

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009)............................31

*Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991 (9th Cir. 2000) ..............................................4

*Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323 (7th Cir. 2011) ..........................30

<u>**U.S. District Court**</u>

*Black v. Hartford Life Ins. Co.*, 2019 U.S. Dist. LEXIS 96711 (D. Or. June 10, 2019) .....................28

*Coleman-Fire v. Standard Ins. Co.*, 2019 U.S. Dist. LEXIS 76726 (D. Or. May 7, 2019)...........15, 31

*Gorena v. Aetna Life Ins. Co.*, 2018 U.S. Dist. LEXIS 104071 (W.D. Wash. June 15, 2018).......30, 32

*Perryman v. Provident Life & Acc. Ins. Co.*, 690 F. Supp. 2d 917 (D. Ariz. 2010) ...........................30

*Smith v. Hartford Life & Acc. Ins. Co.*, 2013 U.S. Dist. LEXIS 13868 (N.D. Cal. Jan. 30, 2013) ......31

*Teicher v. Regence Health & Life Ins. Co.*, 562 F. Supp. 2d 1128 (D. Or. 2008)................................30

<u>**Other Authorities**</u>

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................3, 4

Local Rules of Civil Procedure 7-1(a) ...................................................................................1

## I.    CERTIFICATION UNDER LR 7-1(a)

The undersigned certifies that the parties have made a good faith effort through telephone and email communication, but have been unable to resolve all the issues.

## II.    INTRODUCTION

On March 18, 2019, 46-year-old Dr. Jennifer Mueller, a family practice physician for Kaiser Permanente, was injured when she was hit by another bicyclist while bicycling to work. Dr. Mueller's injuries from the accident included a mild traumatic brain injury ("mTBI") with loss of consciousness, a facial (maxilla) bone fracture, a shoulder injury, and contusions. She has suffered from fatigue, cognitive problems, including, *inter alia*, decreased concentration and mental stamina and fogginess, vision/coordination problems, reduced tolerance for reading/use of screens, vertigo, dizziness, headaches and light sensitivity as the result of the accident. Her primary care physician, Dr. Katherine Laughlin, diagnosed post concussion syndrome ("PCS"). In late March 2019, Dr. Mueller submitted an own occupation/specialty short-term disability ("STD") claim through Kaiser's group coverage, which Hartford, the administrator, approved.

Within weeks after the accident, Dr. Laughlin referred Dr. Mueller for speech-language therapy ("SLT"), physical therapy ("PT") and occupational therapy ("OT") evaluations and treatment and in late May 2019, Dr. Mueller established care with Kaiser optometrist/PCS specialist, Dr. Ceclia Muraki, for treatment of binocular vision and photophobia. In February 2020, Dr. Mueller established care with psychiatrist Dr. Mona Mirchandani, a physiatrist and PCS specialist, for her continuing PCS symptoms. In June 2021, she was evaluated by the Brain Rehabilitation Network, and admitted to its PCS bootcamp program. She continued to receive treatment for PCS through the close of the record.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

In consultation with Dr. Laughlin, Dr. Mueller returned to practice part-time in late May 2019, and planned to increase her work hours weekly to achieve full-time status by June 30th. However, her continuing PCS symptoms, including cognitive fatigue, slowness and dulling, physical fatigue and increased need for sleep continued and she was unable to return to do so.

In March 2020, after interviewing Dr. Mueller and administering cognitive testing, which showed normal results, neuropsychologist Dr. Christopher Tongue diagnosed PCS, and noted that Dr. Mueller was in the 10 percent of mTBI patients who continue to suffer symptoms after one year. He anticipated that she would continue to improve over the next year but "may experience some persistence of some symptoms such as headache with fatigue and a decrease in cognitive efficiency when fatigued." HART 658.

That is precisely what occurred. Despite rapid evaluation and intervention after the accident and additional treatment by a multidisciplinary team through the PCS bootcamp program, Dr. Mueller suffered chronic PCS symptoms that precluded her from returning to her full-time medical practice – including limited cognitive endurance, difficulties with attention and executive function, chronic headaches, fatigue, dizziness, vision problems and photosensitivity.

Hartford approved Dr. Mueller's own occupation/speciality disability claim from March 18, 2019 through September 13, 2019, and paid STD benefits through the maximum benefit period of 25 weeks. Relying upon file reviews by physician-consultants, Hartford then denied further benefits, despite copious documentation that she could not return to a full-time medical practice – even after Dr. Laughlin explained that Dr. Mueller was limited to a half-time practice because of fatigue, reduced stamina and cognitive problems, and that she was doing her utmost to return to full-time work, even at the expense of her personal life, and showed no signs of malingering.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Hartford's consultants' reviews show disregard of the medical record, Dr. Mueller's occupational duties as a family practice physician and the nature of mTBI and PCS. Hartford's consultants based their opinions upon a lack of objective evidence, whereas the long-term disability ("LTD") plan contains no such requirement. They ignored the medical record. They failed to address or take into account that fatigue and lack of stamina are the primary symptoms preventing Dr. Mueller from returning to full-time medical practice and that she has credibly reported her symptoms.

Dr. Mueller seeks an order pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), declaring that Hartford erred in denying her LTD claim under the Northwest Permanente, P.C. disability plan and ordering Hartford to approve her claim and pay her monthly LTD benefit under the plan effective September 14, 2019, and continuing so long as she remains disabled under the terms of the LTD plan.

### III.    ARGUMENT

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), allows Dr. Mueller, a plan "participant," to bring a civil action in federal court "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) ("The [ERISA] permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."). Under a *de novo* review, Dr. Mueller has proved by a preponderance of the evidence that she is disabled under the terms of the LTD plan, i.e., as the result of "accidental body injury" (PLAN 25), she is "prevented from performing one or more of the Essential Duties of" "[Her] Occupation" – family practice

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

physician – and as a result [Her] Current Monthly Earnings are less than 80% of [Her] Indexed Pre-disability Earnings." PLAN 24.[1]

### A. Dr. Mueller is Disabled From Her Occupation as a Family Practice Physician.

#### 1. The applicable standard of review is *de novo*.

A denial of benefits challenged under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999). The insurer must prove that the policy contains a grant of discretion that triggers the abuse of discretion standard of review. *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 994 (9th Cir. 2000) (citing *Kearney*, 175 F.3d at 1089). Hartford does not meet that burden.

Hartford provided a "Certificate of Insurance" that summarizes the policy but is not the policy. PLAN 7-25. The Certificate states, "Any difference between The Policy and this certificate will be settled according to the provisions of The Policy…." PLAN 7. Because Hartford has not produced the policy, and therefore cannot prove whether it contains a discretionary clause, it cannot meet its burden. Nor can Hartford prove that OAR 836-010-0026, Oregon's so-called ban on discretionary clauses, effective March 12, 2013, applies. Accordingly, the applicable standard of review is *de novo*.

/ /

---

[1] Dr. Mueller's Pre-disability Earnings ("PDE") were $16,455.00/month. HART 28. Her "Current Monthly Earnings" were, on average $7,517.65 per month (weekly average $1748.29 × 4.3) from 05/20/2019 to 08/11/2019 (STD AR 7), for a loss of 54.3 percent, illustrating that, even without annual upward indexing of her PDE figure (which increases the loss of earnings as a percentage), she easily has met the "less than 80%" threshold for her Current Monthly Earnings.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

**2. Dr. Mueller's "Occupation" is family practice physician.**

The LTD plan states, "If You are a Physician, Your Occupation means the general or sub-specialty in which You are practicing for which there is a specialty or sub-specialty recognized by the American Board of Medical Specialties." PLAN 28. Dr. Mueller's occupation is family medicine physician. *See* HART 121 (Hartford: "...you last worked for Northwest Permanente, P.C. full-time on 03/16/2019 as a Family Medicine Physician"), HART 689 (Physician Employment Contract); https://www.abms.org/member-boards/specialty-subspecialty -certificates/ (American Board of Medical Specialties website, listing Family Medicine as speciality) (accessed 4/15/23). The LTD Plan states that Dr. Mueller's "ability to work the number of hours in Your regularly scheduled work week is an Essential Duty." PLAN 25. Accordingly, she is considered disabled if she cannot practice family medicine on a full-time basis. *See* HART 121 ("you last worked for Northwest Permanente, P.C. full-time on 03/16/2019").

**3. Dr. Mueller developed post concussion syndrome as the result of a March 2019 bicycle accident.**

On March 18, 2019, Dr. Mueller was riding her bicycle to work (STD AR 115) when "another bike T-boned her bike and she flew off bike landing on face the right side of body." HART 783. She suffered "loss of consciousness at scene, quite a bit of amnesia in the hours after the accident." *Id*. Dr. Mueller was transported by ambulance to Oregon Health & Science University ("OHSU") and admitted overnight for observation. *Id*. She was diagnosed with a concussion, a right maxillary (facial bone) fracture, and contusions. *Id*.

On March 22nd, Dr. Mueller reported to Dr. Laughlin that she was "still very tired" and suffering from "decreased concentration," "'decreased brain power,'" continuing "vertigo,

especially movement related" and "[s]ome headaches in the evenings." HART 783. Dr. Laughlin diagnosed post concussion syndrome and positional vertigo. HART 785. She referred Dr. Mueller to speech and language therapy and physical therapy and requested a physiatrist's review. *Id*. Physiatrist Dr. Bruce Stelmark concurred with Dr. Laughlin's assessment and referrals and recommended "optometry followed by neuro optometry consult and OT evaluation if any issues with vision." HART 798.

On March 29th, Dr. Mueller reported to Hartford during an intake interview for her STD claim "[c]urrent symptoms [of] dizziness, fatigue, brain fogginess, light sensitivity"and reported "Comorbidit[ies of] hypothyroidism [and] depression." STD AR 26. On April 1, 2019, Hartford approved Dr. Mueller's STD claim. STD AR 23 ("claim approved").

### 4. Dr. Mueller began occupational, physical and speech therapy in April 2019.

In early April 2019, Dr. Mueller began occupational therapy with Kathryn Chaimov, OT, who found Dr. Mueller's "subjective report and objective findings consistent with visual sensitivity including light sensitivity, impaired reading and screen use, fatigue, impaired concentration and processing speed…" HART 800. Dr. Mueller exhibited convergence insufficiency and OT Chaimov recommended "OT intervention to reduce symptoms and develop strategies in order to facilitate graded return to functional activity and resume I/ADLs without or with fewer limitations." *Id.* She warned that Dr. Mueller "will likely need modified duty and hours when returning to work, including reduced hours, extra rest breaks." *Id*. On April 11th, Dr. Mueller saw Dr. Stelmak with "ongoing fatigue, photophobia, reduced tolerance to read or screen time and vertigo with getting up quickly or rolling over." HART 808. She had "[t]ried return to work recently for 2 hours but was very limited, slow processing and unable to accomplish [m]uch." *Id*.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

On April 17th, Dr. Mueller began PT. Her "dizziness was more positional, now getting better" and while balance was "not an issue," she had "chronic vertigo with certain yoga poses, feels like the world is rocking." HART 817. Sarah Woddell, PT, assessed, "subjective report and objective findings consistent with post-concussion syndrome, no evidence of benign paroxysmal positional vertigo today with testing" and that, "Jennifer will benefit from skilled PT intervention to reduce symptoms and optimize functional movement in order to resume all activity." HART 816.

On April 18th, Dr. Mueller reported to OT Chaimov that she was "[f]eeling much better since this weekend. Haven't needed a nap. Worse when she goes somewhere." She had "[r]ead a bit in graphic novel, went OK, but no length of time" and had "[a]ttempted to get on computer last week - made it almost 2 hours - end of 2 hours was having trouble vision, slow." HART 822.

On April 29th, Dr. Mueller began speech therapy with speech language pathologist ("SLP") Abigail Cary, SS, CCC-SLP. HART 827. Dr. Mueller reported difficulty with "word-finding, attention, and memory." *Id*. Long-term treatment goals "by 7/28/19" were to "improve cognitive-linguistic participation adequate to complete work, home, and community responsibilities." *Id*. On May 2nd, OT Chaimov documented:

> Movie was horrible afterwards- carried over to next day. Did use strategies including sunglasses, eye breaks, pacing. CPR class also provoked headache, as well as reading course textbook. Plan to do 2 additional weeks off work before starting transition with part time. **Advised regarding importance of looking for successful level of activity, not maximal tolerance/symptoms**. **Advised regarding looking at series of days and cumulative nature of activities and environment on symptoms**.

HART 836 (emphasis added).

/ /

/ /

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

### 5.  Dr. Mueller returned to part-time medical practice in May 2019 with continuing PCS symptoms.

On May 5, 2019, Dr. Laughlin noted on a Hartford form that Dr. Mueller was unable to work through 5/19/2019 and would return to work "4 hours per day, 4 days a week from 05/20/19 through 06/02/19." STD AR 108. On May 8th, OT Chiang noted that Dr. Mueller was "making slow steady gains with improved ability to read and use computer before being limited by her symptoms" and "[m]oderate improvement with dizziness and nausea during activities." HART 838. SLP Cary's May 14th note documented ongoing struggles: "Jennifer has been working with OT and independently on strategizing successful return to work" half days,[2] seeing "2 patients/hour" and was planning "to go into the office this week to figure out how to control lighting and screen-use." HART 845.

On May 21, 2019, Dr. Mueller saw optometrist Dr. Muraki for vision problems and photophobia. HART 847. Her "[r]esidual symptoms include[d]: provocation of fatigue, photophobia, headache, word finding." *Id*. She found it "[h]ard to look at her Apple watch." *Id*. Dr. Muraki noted that Dr. Mueller's first part-time workday had "involved only in box management" and that despite her use of "blue block glasses," "[b]y 9:30 [she had had] provocation of nausea and photophobia" and had the "perception of words floating." HART 848. Dr. Muraki assessed PCS and photophobia as well as binocular vision disorder, with "[c]onvergence insufficiency[,] [n]arrow fusion range at near[, and] [p]oor vergence facility," which were "[l]ikely contributors to [her] decreased interest in reading, provocation of headache

---

[2] Dr. Mueller's regular work schedule was 40 hours per week. *See* STD AR 27.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

and fatigue after sustained near activity." HART 849. She prescribed "prism and jump duction

tranaglyph from Bernell." *Id*.[3]

On May 31st, Dr. Mueller emailed her Hartford claim representative explaining, "I am

back to work half time right now and my schedule is ramping up slowly over the next several

weeks." STD AR 12. She stated her anticipated work hours, increasing to full-time by June 30th.

*Id*.

On June 12th, SLP Cary noted that Dr. Mueller was working "5 half days per week" and

that "she feels like her brain is doing what it needs to do" at work. HART 852. Dr. Mueller

reported:

- 5 half days per week; when she's at work she feels like her brain is doing what it needs to do.
- Has really stuck with limiting exertion outside of work.
- Had to take naps over the weekend.
- Feeling discouraged by increased fatigue.

*Id*. Ms. Cary assessed, "Cognition is progressively improving, but she is not back to baseline"

and recommended continuing therapy "to address compensations." *Id*.

On July 25, 2019, Dr. Mueller reported to Dr. Laughlin, "'I'm definitely better'" and that

she "has had to take 'the longer view of things.'" HART 854. Dr. Laughlin noted, "seeing 6

patients daily - sometimes is very tired and has trouble with concentration and can't explain

why/went blueberry picking for one hour and it made her tired for several days. Tries to pace her

activities when she's not working. Wearing special glasses which help with photosensitivity and

have prisms for double vision." *Id*. While Dr. Mueller was "[d]oing some driving," she was "not

yet driving on freeway" and "tryi[ng] to walk 2 miles" had "really set her back." *Id*. Dr. Mueller

---

[3] Exercises with tranaglyphs are designed to improve convergence, i.e, to "help to teach the brain to fuse the image." *See e.g.* https://seeinstereo.wordpress.com/exercises/a-szem-egyutt-mozgasat-segito-gyakorlatok-kozelites-tavolitas/tranaglyphs/? (accessed June 1, 2023).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

reported "neck pain and headaches - wake her up in the morning." *Id*. She was "[a]pproaching 6 months from injury [and] thinking about longterm disability." *Id*.

On July 31st, Dr. Mueller reported to OT Malone "continued functional vision limitations with reading and difficulty pacing self back to physical activities due to fear of exacerbating symptoms, and lower endurance for community outings." HART 857. She had "not been reading much due to focusing challenges" (*id.*) and was limited to "1-2 hours" of laptop use. HART 858. She had been "address[ing] her mental health" and felt "supported by family and current counselor." HART 859.

On August 14th, Dr. Mueller reported to SLP Cary that she was "getting much better at pacing" but had been unable to meet a goal of walking "15 min 3x/week" — "after 1 exercise episode she had cognitive impact." HART 861. Dr. Mueller was "[w]orking 1/2 days at work," which, she reported, "feels appropriate right now." *Id*. Ms. Cary assessed that her speech and cognition "appear[ed] grossly WNL, but may be impacted by other post-concussive symptoms such as fatigue, pain, stress, cognitive-overload" and assessed "5 months s/p concussion with slowly resolving post-concussion syndrome." *Id*. She encouraged Dr. Mueller to "continue to work with OT for her PCS symptoms and to "follow-up with ST only if she has difficulty with home program." *Id*.

On August 23, 2019, Dr. Mueller reported to Dr. Laughlin that she had done "the most activity I've had in a week," including traveling to the midwest because her father had died. HART 863. She had "started exercising at a lower level" but with that increased activity level, "couldn't close charts by the end of the day." *Id*. She could do her "normal dog walk…but can't walk much farther." *Id*. She was "working 5 half-days weekly" and "considering adding another 2 hours of virtual time - likely…towards end of September or early October." *Id*. Dr. Laughlin

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

completed Hartford's APS form, noting a primary diagnosis of PCS, symptoms of "fatigue, photophobia, headache, word finding, decreased interest in reading" and a treatment plan of a 4-day workweek, increasing to 5 days effective October 1st. STD AR 79.

### 6. Dr. Mueller was unable to return to full-time medical practice because of continuing PCS symptoms.

On September 11, 2019, Dr. Mueller saw Dr. Muraki for her continuing neuro-visual symptoms. The photophobia was "improving" but she had double vision. HART 866. On November 15th, Dr. Muraki noted that Dr. Mueller's photophobia was "better," but qualified this: "eg on overcast days." HART 876. Dr. Muraki documented, "[h]eadaches haven't been bad…" but again, placing the improvement in perspective, noted, "...but hasn't tried to read a book." *Id*. Dr. Mueller was "[w]orking 4h/d patient care" and it remained "harder to multitask." *Id*.

On November 18, 2019, Dr. Mueller reported to Dr. Laughlin, "'I'm less bad.'" HART 880. She reported ongoing struggles with fatigue and concentration problems:

> Still doing half days - seeing 8-9 patients per half day[.]
>
> Patient finds she can't jump back and forth from patients to inbox - can't multitask as well. Going in early to do inbox[.]
>
> Started yoga at home, hasn't done much exercise - hasn't needed naps/still can't schedule 2 things on a weekend.

*Id*.

On December 23rd, Dr. Laughlin saw Dr. Mueller in a video appointment. Dr. Mueller was in Belgium. HART 882. She reported that she had recently gone to Disneyland with her family, where she had been "easily nauseated by rides such as teacups," which she described as "'our family ride'" *Id*. Dr. Mueller had "tried to modify, nap, not go on as many rides" but nevertheless had "felt really tired after she returned, felt slower, running farther behind,"

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

"[s]leeping 12 hours," "[h]ad to call out one day" and it "took a week to feel back to baseline." *Id*. Dr. Mueller felt "frustrated - didn't expect to have this happen." *Id*.

On February 5, 2020, Dr. Mueller saw Dr. Mona Mirchandani (HART 884-46), a Kaiser physiatrist and TBI specialist. Dr. Mueller was "[c]urrently most bothered by: fatigue, low energy/decreased stamina, slower executive function, word finding difficulties, headaches, difficulty concentrating, sleeping too much (requiring naps)." HART 884. Dr. Mirchandani assessed:

> …47 yrs female with history of bike vs. [b]ike accident resulting in head trauma with loss of consciousness, here for follow up for post concussion syndrome. Patient reports symptoms of fatigue, low energy/decreased stamina, slower executive function, word finding difficulties, headaches, difficulty concentrating, sleeping too much (requiring naps). Her poor sleep and stress are likely confounding her symptoms of post concussion syndrome.

HART 891. Dr. Mirchandani recommended that Dr. Mueller continue to use her prescription glasses and follow up with Dr. Muraki; continue OT, ST and her home PT exercise program; undergo a neuropsychological evaluation/cognitive testing; address her poor sleep quality and have a sleep evaluation absent improvement; continue her medications; and continue to see Dr. Laughlin "for headache medication management." *Id*.

On February 20th, Dr. Mueller reported to Dr. Laughlin "ongoing issues with multiple stimuli, vision (uses corrective lenses)" and continuing "decreased stamina, problems with executive function, multitasking, light sensitivity" with a need for "increased time to complete tasks - can't tolerate 8 hours of screen time." HART 893. Dr. Mueller continued "to wear glasses with prisms and light blocking lenses" and "needs to limit clinic time to 4-5 hours daily and limit # of patients per session/anticipates that this will be for another 6-12 months." *Id*.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

On February 28th, SLP Cary noted that Dr. Mueller had had "[p]rogressive improvement" since the Disneyland trip in the fall but was still working part-time and reported "some difficulty with speed of processing when she has add-on/over-books patients" and "[c]ontinues to use a planner to help keep schedule, maintain pacing." HART 895. She was not "committing to more than 2 activities per day." *Id*. She "[s]ometimes has to look words that she knows up on google." *Id*. With reduction in orofacial pain, it was apparent to Dr. Mueller that she was suffering from headaches and "[w]onders if she had them all along." *Id*. Ms. Cary assessed, "Very slowly progressing PCS with continued symptoms of fatigue, slowed executive-functioning and word finding." HART 896.

### 7.  Dr. Mueller is among the 10 percent of mTBI patients whose symptoms persist a year after injury.

On March 13, 2020, Dr. Mueller underwent a neuropsychological evaluation by Christopher Tongue, Ph.D. HART 649-58. Dr. Tongue summarized Dr. Mueller's continuing symptoms and functional problems since the bicycle accident:

> She…continues to have **difficulty with her vision, which is worse with fatigue**, and uses light tint prism glasses when she is doing patient care but continues to have **photosensitivity**. She reports **ongoing difficulty with headache with mental effort**, which is usually a tension headache but not migrainous. She did return to work two months after the accident, first working only two days a week and gradually increasing her patient load. She states that she initially had significant difficulty with multitasking, but after two weeks was able to work and manage most multitasking; however, **continues to have problems with tasks requiring divided attention within the work setting**.
>
> The patient reports that she **continues to have intermittent problems with word finding, which is worse with fatigue toward the end of the day**. In the initial weeks following the accident, she had very poor sleep, and she **continues to have frequent waking at night and sleep is often not restful**, but she says that **this problem "waxes and wanes**."

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

HART 651 (emphasis added). Dr. Mueller assessed "her mood as relatively good." *Id*. Dr.

Tongue also documented:

> One of her chief complaints is **low stamina**, and she has not been able to exercise
> at a level that she had prior to the accident. She also states that she **has had to be
> much more deliberate about using a planner in order to organize her day** and
> **is not able to do as much or as many things as she had been able to do before**.
> She states that when she does try to do more, she "pays for it" by having
> significantly increased fatigue and headache. She finds that **it takes her longer to
> do things in general** but the trajectory overall by her report has been positive
> toward increased functioning and recovery. A trip to Disneyland in December of
> 2019 significantly exacerbated symptoms, and she says that it took about four
> weeks for her to get back to a pattern of recovery. The patient also reports that she
> **continues to have difficulty with driving and tolerating the divided attention
> and multitasking required** and was driven to the evaluation today by her
> husband.

HART 652 (emphasis added).

Dr. Tongue administered a battery of tests, which revealed "measured overall intellect..in

very superior range" and that "fine motor control and motor speed, language based function,

attention and concentration, working memory, sequential reasoning, visually based skills,

abstract reasoning, executive function, learning and memory" were "all normal to superior."

HART 657. Dr. Tongue noted that "[a] self-report measure of personality functioning and general

mental health symptoms did not indicate the presence of acute symptoms of mood or anxiety

disorder" and there was **no "indication of the presence of a somatic symptoms syndrome or

conversion disorder**." *Id*. (emphasis added).

Highlighting the fact that **normal cognitive test results on standardized testing is not

unexpected in TBI patients**, Dr. Tongue concluded:

> **This patient appears to be suffering from a post-concussive syndrome**. This is
> a complex phenomenon which is thought to have multifactorial influences. She
> nevertheless is describing what would be expected, which is a continuous pattern
> of improved functioning over time. **Approximately 10% of patients with mild
> uncomplicated TBI continue to complain of headache with mental effort and**

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

**fatigue a year following the injury. This patient appears to be part of that 10 percent of the population of individuals who have suffered a mild uncomplicated traumatic brain injury**, in this case secondary to her bicycle collision.

*Id.* (emphasis added); *see Coleman-Fire v. Standard Ins. Co.*, No. 3:18-cv-00180-SB, 2019 U.S. Dist. LEXIS 76726, at *34 (D. Or. May 7, 2019) ("...the record supports a finding that recovery from a TBI varies among individuals… In fact, medical literature reports that roughly '15% of [PCS] patients complain of problems more than 12 months after injury,' and these patients are 'likely to experience persistent and intrusive symptoms that may be refractory to treatment and impose a lifelong disability.'" (record citation omitted)). Dr. Tongue stated, "**I anticipate that she will continue to see improvement over the next 12 months but may experience some persistence of some symptoms such as headache with fatigue and a decrease in cognitive efficiency when fatigued**." HART 658 (emphasis added).

### 8. Dr. Mueller remained disabled through the close of the record.

Dr. Mueller's providers documents continuing symptoms and functional limitations through the close of the record:

**January 8, 2021 (PT Ruegsegger)**: "Current symptoms" included "dizziness and headaches with driving, feeling off balance at night." HART 314. Dr. Mueller was "working on her balance exercises. Feels she can sustain them for longer. Feels with VOR exercises are challenging, gets blurry quickly." *Id.*

**January 21, 2021 (SLP Cary)**: Dr. Mueller reported, *inter alia*:
- Has adjusted her schedule to support more breaks
- Sometimes can't see when she's getting worn-down
- At home she can stop before she hit[s] a wall

HART 318.

**February 18, 2021 (SLP Cary)**: After participating in a craft swap, Dr. Mueller was "very wiped" and had "second-guessed herself for the first time about a work decision." HART 320. She had determined that she would "be doing more virtual visits, and eliminating evening

work." *Id*. Ms. Cary recommended that Dr. Mueller "[t]rack the energy involved with all new and routine tasks," explaining, "[y]ou have a finite amount of cognitive energy--and it's less than it used to be. Make sure you know how much energy you need to use for the activities in an upcoming week, and plan accordingly. Plan extra rest time as needed." *Id*.

**February 25, 2021 (SLP Cary)**: Dr. Mueller had realized that she "[c]an't ever be done/ahead of things at work" and "feels like she has lost some decision-making judgment calls." HART 323. For example, "it didn't occur to her to send a patient to a specialist" and "[i]t doesn't occur to her to off load problems." *Id*. With Ms. Cary's guidance, Dr. Mueller "created a priority list that she can refer to to be used with her energy budget" and "began to make a schedule for home-activities in advance with attention to energy budgeting," with a plan to "delegate around-the-house tasks and set limits on what she can do." *Id*.

**April 30, 2021 (SLP Cary)**: Despite normal results on cognitive testing, Ms. Cary noted, Dr. Mueller "demonstrates functional impairments in executive functioning, memory, word-finding/language, and attention which are exacerbated by concussion symptoms including headache, fatigue, dizziness, nausea, photo and phono sensitivities." HART 325. Dr. Mueller was "making progress toward therapy goals for use of metacognitive and compensatory strategies, but reports setbacks when she is not able to adequately use her strategies especially pacing (ex: needing to work an extra day, unexpected exposure to concentrated light/sounds at grocery store)." *Id*. Ms. Cary noted, "ST continues to recommend reduction in work-hours (20 hrs/week) if that can be accommodated by employer and Jennifer's family finances." *Id*.

**May 3, 2021 (Dr. Laughlin)**: Dr. Mueller had "recently worked on a Saturday – hoped she'd be able to do this even though it was 6 days in a row." HART 328. By Sunday, however, she was "not doing well" "and had to take Monday and Tuesday off to recover." *Id*. Dr. Mueller "wonders if she should just be working 4 hour days, rather than 5 hour days." *Id*. Dr. Laughlin discussed with Dr. Mueller "the challenges of having an invisible disability - she looks like she's doing OK, but doesn't always function well," and noted, "By the end of her day she is not able to make decisions as well and has to spend quite a bit of time doing follow up and catch up - sometimes spends 8-9 hours at the office." *Id*. Dr. Laughlin noted that the PCS was "improved since last year, but still with significant problems with fatigue, concentration." HART 329.

**May 5, 2021**: Physiatrist Totka Koulzeva-Dussel, M.D., documented:

Today patient's main concern is the inability to work full time as a physician. She is enrolled in Speech/cognitive therapy, Physical therapy for vestibular symptoms management, follows with Dr. Muraki for eye movements/vision management. Completed course of Occupational therapy. **While on 4 hrs 5 days a week schedule[,] patient was able to perform well as a physician**, felt she was able to navigate and prevent the symptoms to exacerbate as described below (see SAC inventory). **She states she is functional in the beginning of the day and as demand throughout the day increases she struggles with cognitive and physical performance, progressively getting worse by the end of the day.**

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

> **Currently on 5 hrs 5 days a week schedule-reports executive function suffers as the day progresses**.

HART 330 (emphasis added). Dr. Mueller reported "headache if I do too much," that had

"[i]ncreased …over the past year, most notably over the past few months with regards to level of

function." HART 332-33. She also reported ongoing photosensitivity and vision changes,

dizziness, nausea, memory loss, headache, poor sleep and diminished cognitive function that

worsens with activity/mental strain/focus/ concentration. HART 333-34. On an SAC

(Standardized Assessment of Concussion) inventory, Dr. Mueller reported, on a scale of 0 to 6:

> Headache: 3
> Pressure in head: 3
> Neck pain: 0
> Nausea/vomiting: (no emesis) nausea daily 2 to 4
> Dizziness: 3
> Blurred vision: 2, improved with wearing prism glasses.
> Balance problems: 0 to worse at night, 2-3
> Sensitivity to light: 4-5, patient has blue block glasses with prisms
> Sensitivity to noise: 4-5
> Feeling slowed down: from none to 6
> Feeling like in a fog: 4-6
> Don't feel right: 6
> Difficulty concentrating: 5
> Difficulty remembering: 5-6
> Fatigue or low energy: 5
> Confusion: 0
> Drowsiness: 1
> Trouble falling asleep: 1 increased hours required to function
> More emotional: 0
> Irritability: 3 when overstimulated
> Sadness: 0
> Nervous or anxious: 1

HART 330-31.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Dr. Koulzeva-Dussel assessed, "Based on the History and reported symptoms[,] patient appears to have decreased endurance and worsening cognitive and executive function performances as the day progresses." HART 331.

**On June 22, 2021**, Dr. Mueller underwent a "[PCS] Bootcamp initial evaluation" (HART 483) with a multidisciplinary team, including PT, OT, SLT and a psychologist, at the Brain Rehabilitation Network ("BRN"), Portland.. HART 480-516. Dr. Mueller reported to BRN psychiatrist Dr. Jennifer Cann ongoing "sensory sensitivities (light > sound), headaches, dizziness/nausea, fatigue, fogginess, vision changes, impaired balance (especially at night), poor memory, poor concentration and attention, impaired executive functioning, difficulty with word finding, and poor sleep." HART 486. While her "[o]verall symptoms [had] improved," they were "still present when [Dr.] Mueller is cognitively or physically fatigued." *Id*. She was working "5 hours, 5 days/week" and reported that she was "functional in the beginning of the day but cognitive and physical performance worsen through the day" and was "struggling with identifying a paced schedule that is also productive." HART 487. Dr. Cann documented "[d]ecreased cognitive endurance and executive function" and that Dr. Mueller "[r]equires more sleep than prior to injury." *Id*.; *See* HART 491-92.

BRN PT Amanda Hiller (HART 493-98) noted that Dr. Mueller's strengths included the fact she was "[m]otivated for recovery" and "[c]urrently working," and had a "[h]istory of being physically active prior to injury." HART 493. Her limitations included headache, dizziness, fatigue, and "[r]eported imbalance when fatigued." *Id*. Based upon evaluation, Ms. Hiller concluded that the "symptoms follow the pattern of Persistent Postural Perceptual Dizziness (PPPD)." HART 498.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Dr. Mueller reported to BRN OT Alaina Osborn, MOT, OTR/L (HART 499-505), "work is my biggest challenge," explaining, "Getting through my workday and being functional at the end of it is hard. Getting through my workday and not be[ing] done by the end of it would be a win." HART 500. Ms. Osborn assessed, "decreased participation in home and community activities, decreased participation in leisure pursuits, fatigue, sensory sensitivities, decreased activity tolerance, vision changes" and noted that Dr. Mueller, "will benefit from further training to compensate for the above deficits." HART 504. SLP Denise Davis, MS, CCC-SLP (HART 506-10), assessed "impaired attention and concentration, executive dysfunction, and significantly reduced cognitive endurance." HART 507. She concluded that Dr. Mueller "will benefit from participation in SLP treatment to address core cognitive communication skill building, compensatory strategy training, and education…" and listed treatment goals. *Id*. Dr. Mueller reported "[f]atigue and increased headache" after the assessment. HART 510.

BRN psychologist Jodi Palensky, Ph.D., noted that Dr. Mueller's medical record documented "sensory sensitivities (light and sound primarily), headaches (3-4x/mo), dizziness/nausea, fatigue, fogginess, vision changes, impaired balance (worse at night), poor memory, poor concentration and attention, impaired executive functioning, difficulty with word finding, poor sleep, cognitive challenges that are impacted by fatigue, irritability, and decreased endurance" and Dr. Mueller reported "no improvement in her symptoms in the past 6-12 months" and that "'I work hard to not make it worse.'" HART 512. Again, Dr. Mueller identified work as her "biggest issue," explaining, "I have to feed my family." *Id*. She reported that by "the end of the day at work I get progressively dumber" but am "not so great at being aware [of this] in the moment…'" *Id*. Dr. Palensky noted that with "her reduced hours and caseload, Dr. Mueller "is presently able to do '0-1 things at home'" and that "at the end of the day she notices difficulty

with accurately using words, reduced executive functioning, and slowed cognitive processing."
*Id*. Dr. Mueller reported needing "'so much more [sleep] now' bedtime 10pm/12am-wake 10
am" and also reported daily "dizziness/nausea." HART 515.

The team recommended that Dr. Mueller participate in BRN's PCS Bootcamp "1 day/
week (8:30am to 3:30pm) for 4 weeks to include Occupational Therapy, Physical Therapy,
Speech Therapy, Rehabilitation Psychology, and Rehabilitation Medicine" to address
"[c]ognitive endurance, attention, executive function, headaches, fatigue, dizziness, home and
community participation, leisure pursuits, activity tolerance, vision changes, self-limited driving,
plan for return to full work schedule, sensory sensitivities, compensatory strategy training."
HART 483.

**July 23, 2021 (SLP Cary)**: New polarized sunglasses had been helpful. Dr. Mueller was
"trying to meditate daily" and "[t]hinks sleep is worse." HART 336. She "identified multiple
things that she has been having an easier time letting go of (and not keeping on a to-do list)." *Id*.
She "[c]ontinues to write everything down. *Id*.

**August 13, 2001 (SLP Cary)**: Dr. Mueller had "accidentally got[ten] on the Hwy" while
driving and "[f]elt like her brain couldn't block out the movement – had spatial orientation
issues." HART 338-39. A walk had induced "a low grade HA," which had increased the next
day. HART 339. Ms. Cary "[r]eviewed [the] importance of not over-planning with planned
upcoming participation in intensive rehab." *Id*.

**August 25, 2021 (Dr. Laughlin)**: "[PCS]/"difficulty concentrating/ongoing
photosensitivity" despite "normal neuropsychological testing" and "[n]ausea/ vertigo with even
short car rides." HART 340. Dr. Mueller "continued to refer to her normal neuropsychological
testing"; Dr. Laughlin noted, "We discussed that high-functioning patients may have normal
testing, but still have difficulty with decision making, especially when fatigued." *Id*.[4]

/ /

/ /

---

[4] The record contains 12 additional reports of BRN OT, PT, SLP and psychology providers dated
8/30/21, 9/13/21, and 9/27/21, received by Hartford after its final denial of September 24, 2021
(HART 101-04), documenting Dr. Mueller's ongoing PCS symptoms. HART 153-93.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

### 9.  Dr. Stelmack and Dr. Laughlin confirmed that Mueller is disabled.

Dr. Mueller's medical record establishes that she is disabled because she cannot practice

as a family practice physician on a full-time basis because of PCS resulting from the March 18,

2019, bicycle accident. Drs. Stelmack and Laughlin confirmed that Dr. Mueller was disabled in

forms and letters:

**April 15, 2019, Dr. Stelmack**: "ongoing fatigue, photophobia, reduced tolerance to read
or screen time and vertigo with getting up quickly or rolling over. She has been unable to drive
and unable to return to work." STD AR 125.

**May 6, 2019, Dr. Laughlin**: "Reason for Off Work: Incapacitating Injury or Pain Off
Work." "This patient is placed off work from 3/18/2019 through 5/19/2019." STD AR 108.

**September 13, 2019, Dr. Laughlin**: "Symptoms include fatigue, photophobla, headache,
word finding, decreased interest in reading"; "REDUCED WORK HOURS OF 4 HOURS PER
DAY, 5 DAYS PER WEEK STARTING 10-01-19 THRU 12-31-19." STD AR 79.

**February 13, 2020, Dr. Laughlin:** "...Reduced work hours: 5-20-19 through 7-1-20, 4
hours per day 5 days per week." Diagnosis: PCS. HART 911.

**September 23, 2020, Hartford telephone note:** "Dr. Laughlin states she reviewed the
reports [of Drs. Herzog and Getz] and states that even people with normal physical exam can't
function as a physician with her condition. EE is doing her u[t]most to try to do as much as she
can and EE is not malingering or exaggerating." HART 41.

**September 24, 2020, Dr. Laughlin:** "Patient is able to work 5 hours daily but has
ongoing decreased functional capacity and stamina. She is easily fatigued with higher cognitive
function which results in slower processing times, difficulty with word finding and decreased
executive functioning. Patient has headaches, nausea and visual disturbances with prolonged
mental activity. Irritability when fatigued." HART 585 (response to Hartford's Dr. Getz).

**April 30, 2021, SLP Cary**: "ST continues to recommend reduction in work-hours (20
hrs/week) if that can be accommodated by employer and Jennifer's family finances." HART 325.

### B.  Hartford Erroneously Denied Dr. Mueller's LTD Claim.

Hartford approved Dr. Mueller's "Own Occupation" disability claim through September

13, 2019, the STD plan's 25-week maximum benefit period (STD PLAN 5). STD AR 23, HART

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

122 ("...we have concluded that you are able to perform [your occupational] duties as of 09/14/2019.").

### 1. Hartford's file review consultants concluded that Dr. Mueller was not disabled based primarily upon a lack of objective test findings.

In August 2020, Hartford referred Dr. Mueller's claim for physiatry and neuropsychology file reviews (HART 636-38, 641-43) and denied her claim based upon the consultants' reports. The reviewing physiatrist, Dr. Katherine Herzog, stated in an August 28th letter to Dr. Laughlin, that Dr. Mueller had been disabled from "3/18/19-5/14/19" but that thereafter, the "documentation does not support any restrictions and/or limitations." HART 619. Dr. Herzog acknowledged that Dr. Mueller continued to report symptoms after May 14, but cited as the basis for her opinion that medical visits were by telephone, there had been "no change to treatment," OT visits were "sparse" and had ended on 9/20/19, and that Dr. Mueller had not discussed "headache medication management" "with Dr. Laughlin, 2/20/20," as recommended by Dr. Mirchandani. HART 619-20. These facts, she stated, "lead[] this reviewer to opine that claimant was stable." HART 620. Dr. Herzog asserted, "in conclusion, from 3/18/19 - 5/14/19 the claimant's impairments were not of the severity that would preclude functioning outside of activities of daily living." *Id*.

Dr. Herzog posed questions to Dr. Laughlin, which Dr. Laughlin answered:

- Q: "When was the last time Dr. Mueller was seen in person? How was she doing at that time?"
  A: "2/5/20 by Dr. Mirchandani, physiatrist. Pt continued to have fatigue, decreased stamina, slower executive function, word finding difficulties, headaches, difficulty concentrating and hypersomnia."

*Id*. (9/8/20); *See* p. 12, *supra* (addressing Dr. Mirchandani's 2/5/20 report (HART 884-86)).

- Q: "Since 2/28/20 has the claimant received further medical care (physician/therapy, testing, etc)? If yes, what?"

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

A: "7/29/20 Speech therapy telephone follow up
7/31/20 video visit - physiatrist followup [Dr. Mirchandani]
8/19/20 occupational therapy -telephone follow up
8/20/20 speech therapy - telephone follow up
8/26/20 physical therapy - video visit follow up."
                              ***
"Because of the pandemic, all departments are trying to minimize in
person follow up appointments."

*Id*. Dr. Herzog did not ask to review the medical reports identified by Dr. Laughlin that

she had not reviewed – even though she had cited lack of treatment as a basis for her

opinion – and Hartford did not tell Dr. Mueller that these records were missing. After

receiving Dr. Laughlin's response, Dr. Herzog issued a report dated September 14, 2020,

in which she largely repeated her prior assertions and concluded, "No restrictions and or

limitations, within the realm of PM&R/Pain Medicine, are supported from 5/15/19 -

7/1/20." HART 613.

Neuropsychology reviewer Dr. Glen Getz asserted in a letter to Dr. Laughlin,

"Based on a review of the provided data…I opined within a reasonable degree of clinical

probability, that the medical records do not substantiate severe observed or quantified

cognitive symptoms and impairment in function sufficient to limit work activity" from

03/18/19 through 07/01/20. HART 631. Dr. Getz explained that the basis for his opinion

was normal objective test results and assessments:

Specifically, my review found that although the claimant endorsed experiencing
cognitive symptoms, she was consistently assessed as having normal mental
status examinations by her providers. Findings from a speech language pathology
assessment completed on 4/29/19 revealed that the claimant's results were entirely
intact with 100% accuracy in a number of domains. A formal neuropsychological
evaluation upon my review of Dr. Tongue's evaluation did not include
performance validity measures, but still revealed performance that fell between
the average and exceptionally high ranges. This is inconsistent with an individual
experiencing severe quantified cognitive symptoms and impairment in function
sufficient to limit work activity.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

*Id*. Dr. Getz posed questions to Dr. Laughlin, which she answered. HART 584-85

Asked whether Dr. Mueller has cognitive deficits, Dr. Laughlin explained that in her opinion, Dr. Mueller does, and cited Dr. Mueller's reports and "Dr. Mirchandani's assessment on 7/31/20" as basis for her opinion, noting "[Dr. Mirchandani] is a physiatrist specializing in head injuries and post concussion care." HART 584 (9/24/20).[5] Asked whether there had been a "formal assessment supporting disability," Dr. Laughlin pointed to "a SAC inventory assessment on July 31, 2021." HART 585. Regarding Dr. Mueller's functional limitations, Dr. Laughlin explained:

> Patient is able to work 5 hours daily but has ongoing decreased functional capacity and stamina. She is easily fatigued with higher cognitive function which results in slower processing times, difficulty with word finding and decreased executive functioning. Patient has headaches, nausea and visual disturbances with prolonged mental activity. Irritability when fatigued.

*Id*. Dr. Laughlin identified her recommended treatment as "continued occupational, speech & physical therapy." *Id*. Asked whether there had been "any formal assessment of exaggeration or over-reporting," Dr. Laughlin responded, "Not to my knowledge. But patient is doing her utmost to return to work and function professionally even at the expense of her personal life outside work." *Id*. Dr. Getz asserted by letter dated October 6th, "...the additional information provided from Dr. Laughlin does not alter my opinion." HART 569. Hartford asserted in its adverse benefit decision regarding Dr. Mueller's LTD claim, dated October 6, 2020, "The combined information in your file does not show that you are unable to perform the Essential Duties of

---

[5] Dr. Laughlin referred Hartford to Dr. Mueller's July 31, 2020 office visit with Dr. Mirchandani in her responses to both consultants' reports but Hartford never obtained the office note or informed Dr. Mueller that it was missing. *See* HART 584, 620.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

Your Occupation on a full time basis as of 09/14/2019. Because of this, we must deny your claim for LTD benefits." HART 122.

Hartford retained two more file reviewers, physiatrist Dr. Kevin Kohan, and neuropsychologist Dr. Gabriel Jasso, after receiving Dr. Mueller's July 2021 appeal (HART 21-22) and obtaining BRN's June 2021 intake evaluations and reports (HART 480-516) and Kaiser's medical records from January through August 2021. *See* HART 112, 402-04, 314-41; *see* pp. 15-18, 20, *supra* (discussing these records).

Dr. Kohan (HART 261-66) acknowledged that Dr. Mueller "was involved in a bicycle accident…with loss of consciousness" and "[s]ince the accident,…has been experiencing sensory sensitivities, headaches, dizziness/nausea, fatigue, fogginess, vision changes, impaired balance, poor memory, poor concentration, and attention." HART 265. Dr. Kohan summarized medical records documenting fatigue, headaches, visual sensitivity, a convergence problem, photophobia, peripheral vertigo, eye movement [disorder] with reduced screen time/reading time, dizziness, nausea, delayed onset fatigue, loss of balance, decreased stamina, and "objective findings consistent with instability of gait." HART 262-63. Nevertheless, he asserted: "I am unable to find support for a physical impairment as the claimant has no neurological deficit with no motor loss, no sensory loss, no significant alteration in reflexes, no loss of gait/mobility." HART 265. Dr. Kohan "deferred" review of "the claimant's cognitive conditions" to the "appropriate specialty as they are outside of the scope of this report." *Id*. Citing findings of "full strength, full range of motion, and normal gait" on physical exam, Dr. Kohan asserted "a lack of findings that supports physical impairment that would preclude occupational functioning" in concluding that "no activity restrictions are supported." *Id*.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Dr. Jasso (HART 390-95) acknowledged Dr. Mueller's "history of a bicycle collision, in which she was knocked off and suffered head trauma with loss of consciousness waking up in an ambulance." HART 393. He noted that despite "steady recovery following discharge" from the hospital, Dr. Mueller had "the symptoms consistent with post-concussion syndrome subsequently." *Id*. He acknowledged that despite "recovery of function with treatments," she "continuously reported significant cognitive impairments in…attention, concentration, multitasking, and word-finding which impaired her optimal functioning." HART 394.

Citing a lack of objective findings of deficits by speech-language pathologists and "a neuropsychological evaluation which revealed no cognitive or mood impairments in any way," Dr. Jasso asserted: "She reports that her symptoms are associated with fatigue, however with the lack of measurable findings to support the reported claims despite multiple assessments, she cannot be considered to have any cognitive impairments limiting her function but should be assessed more on the effects of fatigue, which I defer to the appropriate specialty reviewers." *Id*. He concluded, "the claimant has no cognitive or mood disorders impairing her functioning, therefore no restrictions or limitations are recommended." *Id*.

Both consultants subsequently reviewed Dr. Laughlin's August 25, 2021 report (HART 340-41) and asserted that it did not change their opinion. HART 255 (Dr. Kohan: "the claimant was seen…for [PCS], difficulty concentrating and ongoing photosensitivity. No physical exam was noted. As noted in my original report, there is still a lack of findings that supports physical impairment that would preclude occupational functioning; therefore, no activity restrictions are supported."), HART 256 (Dr. Jasso: "…the claimant still experiences poor concentration related to her condition. Her physician also opines that neuropsychological testing may be normal in high functioning individuals, despite difficulties with decision making especially when fatigued.

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

An objective assessment of the claimant was made in this documentation. Taking all this into consideration, there are no findings indicating the presence of cognitive deficits in the document presented, despite the continuous complaints of impairments in concentration by the claimant."). Hartford issued its final denial decision dated October 24, 2021 after receiving the Kohan and Jasso file reviews. HART 101-04.

> **2. Hartford's consultants did not address whether Dr. Mueller can practice family medicine on a full-time basis.**

Hartford did not tell its consultants that Dr. Mueller is considered disabled according to her LTD coverage if she cannot practice family medicine on a full–time basis. *See* HART 636-37, 641-42(Herzog/Getz referral questions), HART 264, 393-95 (Dr. Kohan/Dr. Jasso referral questions). Instead, Hartford asked its consultants convoluted questions, such as:

> "Based on the totality of the evidence provided…from a cognitive perspective alone, does the totality of the evidence substantiate severe observed or quantified cognitive symptoms and impairment in function sufficient to limit work activity?" HART 636 (Dr. Getz).

> "Based on the totality of the evidence provided" address Dr. Mueller's " functional abilities, restrictions and limitations for the activities listed below" (lift/carry/push/pull, use upper extremities, drive, climb, bend at waist, balance, kneel/crouch, etc.) HART 612-13 (Dr. Herzog).

> "Please provide your assessment of medically supported restrictions and limitations." "Please advise if the claimant's abilities are sustainable 40 hours a week, or for what specific period and interval. If limited endurance is a factor, please explain what findings support this. *Of note, the claimant is currently working part time at 25 hours a week." HART 264 (Dr. Kohan).

> "Please provide your assessment of psychiatric and/or cognitive restrictions and limitations." HART 393. "Please correlate the self-reported functioning with the available medical information/findings and comment on any consistencies or inconsistencies." HART 394 (Dr. Jasso).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Hartford, the ERISA fiduciary, avoided asking its consultants to make the relevant assessment: Has Dr. Mueller been prevented, by symptoms resulting from her March 2019 accident, from practicing family medicine on a full-time basis, predictably and reliably, without unscheduled interruptions or absences, since September 14, 2019? Nor did Hartford inform them that they should consider Dr. Mueller's credible reports of her subjective symptoms. *See Black v. Hartford Life Ins. Co.*, No. 3:17-CV-1785-HZ, 2019 U.S. Dist. LEXIS 96711, at *33 (D. Or. June 10, 2019) ("Defendant owed a fiduciary duty to Plaintiff under ERISA." (quoting 29 U.S.C. § 1104(a)(1), *Pegram v. Herdrich*, 530 U.S. 211, 223-24 (2000)).

### 3. Hartford's consultants failed to reasonably consider Dr. Mueller's primary PCS symptom of fatigue and lack of stamina.

Fatigue is one of Dr. Mueller's primary disabling symptoms of her PCS. The medical record is replete with her descriptions of feeling fatigued and experiencing increased fatigue when she increased her activities. For example:

"started exercising at a lower level" but with that increased activity level, "couldn't close charts by the end of the day." HART 863 (Dr. Laughlin, 9/2019).

"Started yoga at home, hasn't done much exercise - hasn't needed naps/still can't schedule 2 things on a weekend. " HART 880 (Dr. Laughlin, 11/2019).

"She states that when she does try to do more, she "pays for it" by having significantly increased fatigue and headache." HART 652 (Dr. Tongue, 3/2020).

"Has adjusted her schedule to support more breaks." Sometimes can't see when she's getting worn-down." HART 318 (SP Cary, 1/2021).

"...created a priority list that she can refer to to be used with her energy budget." HART 323 (SP Cary, 3/2021).

"Fatigue or low energy" rated 5 out of 6 in severity on SAC inventory. HART 331 (Dr. Koulzeva-Dussel, 6/2021).

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Hartford's consultants did not reasonably consider Dr. Mueller's credible reports of fatigue throughout the medical record, which were consistent with her injury and diagnosis, even after Dr. Laughlin pointed out to Dr. Herzog (HART 620) and Dr. Getz (HART 585) that fatigue and lack of stamina was a primary issue – and even though Hartford's own Dr. Jasso stated that Dr. Mueller "but should be assessed more on the effects of fatigue, which I defer to the appropriate specialty reviewers." HART 394.

### 4. Hartford's consultants erroneously ignored and downplayed Dr. Mueller's cognitive symptoms based upon normal objective test results.

Hartford's neuropsychology file reviewers, Dr. Getz and Dr. Jasso, relied heavily upon a lack of objective test results in testing as the basis for their conclusions that Dr. Mueller was not disabled by cognitive dysfunction. Dr. Getz asserted, "she was consistently assessed as having normal mental status examinations by her providers," speech language test "results were entirely intact with 100% accuracy in a number of domains," and Dr. Tongue's evaluation…revealed performance that fell between the average and exceptionally high ranges." HART 631. This ignored that while Dr. Mueller is highly intelligent, she suffers from a lack of cognitive stamina.

Dr. Laughlin responded to Dr. Getz, explaining that Dr. Mueller had "decreased functional capacity and stamina" and was "easily fatigued with higher cognitive function." HART 585. After receiving the response – by Dr. Mueller's treating provider – Dr. Getz simply reiterated his prior assertion, without discussion of Dr. Laughlin's statement. HART 568-69.

Dr. Jasso cited normal cognitive test results (HART 393) as the basis for his opinion that "the claimant has no cognitive or mood disorders impairing her functioning, therefore no restrictions or limitations are recommended." HART 394. He asserted this conclusion even after acknowledging that " Dr. Mueller "reported headache and fatigue however which are consistent

with post-concussion syndrome." HART 393. *See Teicher v. Regence Health & Life Ins. Co.,* 562 F. Supp. 2d 1128, 1139 (D. Or. 2008) ("In the end, 'there is no one-to-one correspondence between neuropsychological test results and performance outside the office of a neuropsychologist.'" (quoting neuropsychologist)).

Hartford's LTD plan does not require that there be objective evidence of Dr. Mueller's condition or disability, as do some LTD plans. *See e.g. Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 326-327 (7th Cir. 2011) (limiting benefits to 24 months for "[d]isabilities[] due to sickness or injury, which are primarily based on self-reported symptoms."). Hartford was required to credit Dr. Mueller's reports of cognitive symptoms, particularly since the record made crystal clear that her disability results from diminished physical and cognitive stamina and fatigue. *See Gorena v. Aetna Life Ins. Co.*, No. C17-532 MJP, 2018 U.S. Dist. LEXIS 104071, at *19 (W.D. Wash. June 15, 2018) ("Additionally, the clinical reviews completely overlook Plaintiff's subjective reports of her symptoms (which lend further support to her assertions of disability due to MS), without stating any basis for questioning her credibility."); *Perryman v. Provident Life & Acc. Ins. Co.*, 690 F. Supp. 2d 917, 945 (D. Ariz. 2010) ("...the Court is unpersuaded that the lack of objective mental testing requires it to totally discount the observations of Perryman's treating physicians who noted the existence of various neuropsychological problems during their treatment of her.").

### 5. Hartford erroneously relied upon the opinions of file review consultants who never met Dr. Mueller.

Dr. Mueller suffered a serious accident, with loss of consciousness, TBI and the onset of PCS. She did "her utmost to return to work and function professionally even at the expense of her personal life outside work." HART 585 (Dr. Laughlin). No treating provider has suggested

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

that Dr. Mueller has over-reported her symptoms or expressed doubt about her credibility. Dr.

Tongue observed that "[o]n test tasks she did appear to make her best effort and results obtained

from psychometric assessment can be presumed to provide an accurate picture of her

functioning." HART 652. Dr. Laughlin – who treated Dr. Mueller through the close of the record

– stated that she "is not malingering or exaggerating." HART 41. Hartford's consultants'

assertions that Dr. Mueller does not have limitations and Hartford's conclusion that she can

practice family medicine full-time are inconsistent with these observations.

Hartford elected to forgo its right to interview Dr. Mueller or have her examined, as the

LTD plan allows. PLAN 16. As the Ninth Circuit observed in *Montour v. Hartford Life &*

*Accident Ins. Co*., 588 F.3d 623, 634 (9th Cir. 2009), "[w]hile the Plan does not require a

physical exam by non-treating physicians, in this case that choice 'raise[s] questions about the

thoroughness and accuracy of the benefits determination[.]'" (quoting *Bennett v. Kemper Nat'l*

*Services, Inc*., 514 F3d 547, 554 (6th Cir. 2008)); *see also Coleman-Fire, supra,* 2019 U.S. Dist.

LEXIS 76726, at *26 ("When a court engages in de novo review, it may evaluate and give

credence to the opinions that it finds more reliable and probative." (citing *Rabbat v. Standard Ins.*

*Co.*, 894 F. Supp. 2d 1311, 1322-23 (D. Or. 2012)); *Smith v. Hartford Life & Acc. Ins. Co*, No. C

11-03495 LB, 2013 U.S. Dist. LEXIS 13868, at *68-69 (N.D. Cal. Jan. 30, 2013) ("Even though

the Policy does not require Hartford to hire doctors to give Ms. Smith an in-person examination,

...not doing so 'raise[s] questions about the thoroughness and accuracy of the benefits

determination.'" (quoting *Bennett*)).

Hartford's refusal to credit the evidence of Dr. Mueller's "Own Occupation" disability

throughout the medical record "is based on evidence and opinions which do not credibly rebut

the weight of Plaintiff's data, and constitutes a breach of [Hartford's] fiduciary duty under

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

ERISA to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." *Gorena*, *supra*, 2018 U.S. Dist. LEXIS 104071, at *21.

### IV.    CONCLUSION

For the foregoing reasons, Dr. Mueller respectfully requests that this Court grant her Motion for Judgment Under Rule 52 and enter an order declaring that Hartford erroneously denied her disability claim, ordering Hartford to reinstate and pay her LTD benefits in accordance with the LTD plan for so long as she remains disabled.

DATED: June 13, 2023.

Respectfully Submitted,

s/ Megan E. Glor
Megan E. Glor, OSB #930178
megan@meganglor.com

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400